I believe that Judge Prost wishes to be acknowledged. Thank you, Chief. Well, it's with great pleasure that I move the admission of Meng Xi, who is a member of the Bar in good standing in the United States District Court, Central District of California. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. And I just want to add on a personal note that these are very bittersweet occasions for me, and that is particularly the case with regard to Meng, particularly since she has resisted our temptation to stay in Washington and be with us and is going back to her hometown in California. And firstly, I'll just state the obvious for all of you, which is no Meng, which is she's really raised the bar in our chambers with respect to her style and her grace, and will try to live up to her standards in the future. And just professionally and personally, I want to say what a great honor and pleasure it's been to have spent the past year with Meng and to have the benefit of her strong intellect and her talents and her skills. And she will be sorely missed, although I'm very comfortable to bet on her enormous success in all of her future endeavors. And we wish you the best of luck. And I move her admission. Do you think we ought to pose a few questions before we allow a California attorney into our bar? California is all good, Your Honor. Are you sure about that? I am sure of it. And based on what I know of Ms. Xi and my reliable sources, it's all good. Xi is going to be a great contribution. She'll make a great contribution to our bar. So I second the motion. Well, I would have liked to quiz you on prosecution history at Stopple, but of course we grant this motion with great pleasure. Thank you, Your Honor. Do you solemnly swear or affirm that you will support yourself as an attorney and counselor of this court, abiding in the court's law, and that you will support the prosecution of the United States of America? I do. Welcome to the bar of the United States Court of Appeals of the Federal District. Thank you. Thank you. Thank you. Our first case this morning is MRC Innovations v. Hunter Manufacturing. Mr. Diggs? Here. Please proceed. I'm sorry. May it please the Court. My name is Randy Diggs. I'm a counselor for MRC Innovations. I'm a plaintiff appellant, and I'm joined today with our co-counsel, Bob Sidoti, and Jonathan Withrow, our client couldn't make it due together. There are three points or arguments that I would like to make to the Court. I think each of them, if they're convincing, would send the case back to the trial court for trial. The first one is that there's no Rosen reference. Rosen reference is a term that appellees have used, but there's no Rosen reference for either of the two design patents in suit. The second argument is that the district court didn't articulate any basis for combining elements or features from the prior art. And then the third argument is that even if you combine all of these other elements and features from prior art references together, you don't end up with a prima facie case of obviousness insofar as either of the two patents in suit. So those are the three arguments I intend to reach at this time. Can I start you with the second, if you don't mind? Sure. And that is with regard to your, what was your articulation, that there was no pointing to a motivation to combine these references? As I understand this court's case law from L.A. Gear and some of the other cases, and also the Supreme Court's opinion in KSR, if you're going to make a decision and you say this design or this patent or whatever, this claim is obvious in view of the art, you have to articulate some reasoning for that. We're not talking about comparing mattresses to teapots. I mean, we're in a limited field of pet jerseys. Sure. And I read at least, you can tell me why I'm wrong or if I'm wrong, in Ray Borden and some of our other cases that acknowledge that there's a similarity of appearance. It provides the suggestion, at least when you're in the same narrow field, to apply the features and that's sufficient to satisfy the motivation requirement. And that could be the case if we were talking about one element perhaps, if it was a stripe or a single line or a single panel. And that feature is common in other designs and you could probably say, yeah, I think a designer might pull that. But here we have so many. We have in the football jersey case, we're swapping collars. In the football jersey case, we're changing the fabric and panels on the side. And probably most significantly, we're adding this stitch, this surge stitching, ornamental, non-functional stitching added over top of another stitch on the rear of the jersey that doesn't exist in any of the prior art references. What role does the ordinary observer test play in obviousness for design patents? Well, I think once you get past the first two steps, so you've created, you found a Rosen reference, something that's basically the same. It might have a minor difference, but certainly not three large differences. But if you've got a Rosen reference and then you've got secondary references. I guess to quibble with your language a little bit, how do I know it's a large difference? You say I have three large differences, the V-neck, the surge stitching, the panels. How do I know those are large differences? Well, the court's supposed to, as you said in the Highpoint case and in Durling, the court's supposed to translate the design patent itself into some language. Tell us what the overall impression of this design is. Then they go from that translation and they say why these elements or features of that design that's claimed are present in the Rosen reference. Actually, you're hitting right on the point that's causing me some concern. In Egyptian Goddess, of course, we discredited somewhat the notion that you translate things into language and the language becomes the test. We emphasize that you're always in this ordinary observer world where how it's perceived by that skilled observer becomes important. I understand. I guess where I'm going from is until you can do the ordinary observer test, you have to create something that the ordinary observer can compare. To do that, you have to have a principle reference, I would say. It's very similar. This court says basically the same in its prior precedent. Then if you have something that's basically the same in its overall visual appearance and you can bring a secondary reference in, then you can do your ordinary observer test. Let me go back to the Chief's earlier question, which is your initial answer to him was, well, here there were three differences and they were all large. What does the number really matter? The standard you're looking at is looking through the eyes of an ordinary observer, whether the overall appearance. Why does it matter if it's one or three? When you say large, you're applying what? In your ordinary observer test, you're saying this is a large difference. In the district court's application of the ordinary observer test, she said this distinction was de minimis. How are we to evaluate that? First of all, I would say that that's a question of fact that needs to be resolved. You certainly can't do it on summary judgment. If you have a difference of opinion, it's not a question of law whether something's great or large. That's a fact-finding question. Here we're on the summary judgment standard. They're supposed to have clear and convincing evidence. I can point to several differences in these jerseys. I submit, and we think the evidence shows, that these present very different distinct overall visual appearances. For Section 103 in design patents, is it the ordinary observer test or is it the ordinary designer test? Do you know that's a question I looked at last night at your precedent? Honestly, I'm not sure. I think Highpoint says ordinary designer, doesn't it? Right, and you can go back to Egyptian Goddess and find, I think, a different... For infringement. Yeah, and if that applies to obviousness, I'm not sure. But Highpoint suggests it's an ordinary designer. Actually, if you read this court's opinion, the district court's opinion, she uses both at various times. Let me ask you a different question. The selection of a primary reference or the determination that a reference counts as a Rosen reference, is that a question of fact or a question of law? I believe it's a question of fact. Okay, and so therefore... All right, and how about whether a secondary reference is so related to the first primary reference that it would suggest the usage of whatever ornamentation there is in the secondary reference to the first reference? On that point, I still think there's some question of fact there. I agree with the court. If you've got two things that are very similar, two doll jerseys, and you're going to take elements from one to the other and say that these would be translated, okay, I can buy that. What I can't buy is that the court can't articulate some reason why you would do that, the basis. You still have to have the basis, especially if it's obvious. To move one element to the other, why not say why it's obvious? But isn't that the very basis for the combination? That the references are in the exact same field of art here would be pet jerseys, and they are so similar looking and therefore so closely related that combining known elements using known methods would lead to a predictable result, and you could do any kind of different combinations of those particular references. I think you start running into trouble when you say you can combine so many of these things together. We're just talking about two or three references right now. That's a lot. Design patents, when they're issued, are narrow. To charge somebody with infringement, you have to find something that's basically the same. It's a very narrow claim to begin with. So it ought to be that if you're going to say, by clear and convincing evidence, that this patent is invalid, the references applied ought to be really, really close, and we don't have that. When you get two and three references down the road, there ought to at least be some articulated basis why you would put these together. Why do we come up with this cobbled together stuff? And in this case, where you have complete missing material, in the football jersey, you've got a rear seam that doesn't appear in any prior art reference. The court just says, oh, that's de minimis, so throw it in. Like, apparently, if you have a sewing machine, throw a stitch anywhere, that's obvious because you can make stitches. I don't understand that. And then in the baseball jersey, we have a collar for the sporty canine that's not anywhere similar at all. It has a faux banded top. There's no pipe or banding around the collar whatsoever. It's not at all similar. Well, on the serge stitching, are you suggesting that your client could file another design patent application tomorrow that's identical to the 488 patent, except maybe there's yet an extra line of serge stitching going on somewhere on the jersey, and then all of a sudden that would be another design patent? I think he could, and in fact, it would direct the court to another design patent which recently issued for a hockey jersey, where the only difference, really, is a lengthening of the arms of the jersey and non-specification of the materials that are used to manufacture it. There's no match, as I recall. I would like to reserve the balance of my time if that's acceptable. Thank you, Mr. Dix. Mr. Seidman? Good morning. No dog should be without a pet jersey on a morning like this, I think. Let's start with the same question we asked him, only feel it in the other direction. What basis in the record is there to characterize these differences as de minimis? He characterized them as large. The court says de minimis. What basis in the record is there to make that judgment? I think it's the claim design and the references themselves. It's almost an instinctual thing. Instinctual? This is a factual determination. You don't apply instinct to make a factual determination on summary judgment, do you? Well, it's done in the infringement context by a jury. Isn't Mr. Dix entirely correct that for infringements you get almost the picture and nothing more so that these are incredibly finely distinguished designs where with three differences you really are talking about a significant amount of difference? I don't believe so, Your Honor. On what basis? What in the record gives me a basis to believe you that it's de minimis? Or him that it's large? The judge listed half a dozen features of the prior art that were found in the claim design. The judge distinguished features which were not... The judge also said that the claim design and the prior art were identical in shape and configuration. They were all pet jerseys. You lay one on top of the other. You can't tell the difference. And the visual effect... Is the court making a fact-finding there or is the court relying on a record? Was there an ordinary observer? Which I think is probably the better test after Egyptian goddess. But taking the ordinary designer, was there a designer of ordinary skill in the record? Not on behalf of the appellee, Your Honor. Not on behalf of the appellee. Yeah, not on either side as I saw it. This was just fact-finding kind of blatantly on summary judgment without any record support. What about the objective indicia of non-obviousness? Well, I think the court took that into account and I think the court... How was it dismissed by the judge? Well, the evidence of copying was only copying by... No, what did the judge say? Exactly? Yes. He said that the copying was only by the accused infringer. And of course, if that were the test, then every patent case would have objective evidence of non-obviousness. There was this licensee question, and the only licensee produced by the plaintiff... Wasn't there a credibility determination made that, well, we're going to dismiss this objective indicia evidence because it's only presented by a party in the case? Well, I think the court weighed that evidence... How do you make a credibility determination, which is factual on summary judgment, when you're required to perceive all facts from the perspective of the non-movement? Well, the court goes through the required fact findings... And then once you have them on the record... Pardon me? And once you have those indicia on the record, they're unrebutted, aren't they? They are unrebutted. In which case, the only evidence we have on objective criteria weighs heavily in favor of the non-obviousness of the design. I believe the court took that evidence into account and determined that the other three Graham v. John Deere factors weighed heavily in favor of obviousness and were not outweighed by the objective evidence that was introduced. So, I wanted to emphasize the fact that the Durling test was fully met by the court in its description of the 488 patent and the 487 patent. There was a very detailed description by the judge comparing the V2 reference and the claim design. The Eagles reference and the claim design, both with respect to the 488 patent. On the V2 reference, from the last line on page A9 of the appendix through line 9 on page A10, the court enumerated many features of the V2 prior art and concluded that this is similar to the elements of the claims... Of course, a pet jersey is going to have an opening for the neck. It's going to be tubular. These things that were cited as similarities were nothing more than saying they're both jerseys. With all due respect, I disagree, Your Honor. The court specifically found a V-shaped opening in the neck of the dog,  cross-stitching between the sleeves, which is not something you find in every football, every pet jersey. Two side portions and the neck sleeve and side are made of a non-mesh material, and the body is made from a mesh material. She was specifically characterizing the claim design in that. The judge also noted the differences between this prior art and the claim design, particularly when she described the Eagles' pet jersey. She went on to say that the V-neck collar, which was not in the Eagles' jersey, the additional ornamental serge stitching on the claim design, and the court said, unlike the Eagles' jersey, the claim design uses ornamental serge stitching down the rear portion of the jersey in addition to ornamental serge stitching at the top of the jersey and between the sleeves. These are the differences relied on by the appellant, and the court recognized those differences and they said that taken all together, it's a clear verbal description of the overall appearance of the claim design. So I think the court was very specific about what the 488 and 487 patents showed, and their description, I think, met the underlying rationale of Durling, which is to provide ample reasoning for the court's conclusion of obviousness. The secondary references were clearly so related that they were capable of combining their features with the primary references. They were pet jerseys, they were substantially identical in shape and form, they had seams along the same places as the claim design, and it would be the most natural thing in the world to a designer of ordinary skill to use any of those features. If there were so many of these different features, why did you just copy the accused design? Well, I don't know that there is any specific evidence of copying in the case, Your Honor. And there's an allegation of copying, is there not? Well, which would have to be, again, a factual determination. So you tell me there's no copying, the other side tells me there's copying. Sounds like we need to go back and find out what the facts are, right? Well, even if there was, if there's so much variation, why did you, if not copy, come as close as you could to the identical design here? Well, before the patent issued, of course, anyone has a right to copy a product that's essentially in the public domain. And after the patent issued, the appellee had a very good faith belief that the patent was invalid. Why? Because both the Eagles and the V2 Pet jerseys were known by the appellant when they prosecuted this patent and they failed to bring it to the attention of the examiner during prosecution. Those same two jerseys relied on by the lower court were supplied by the appellant to the appellee, and yet they didn't bring it to the attention. It's really hard to believe that the PTO allowed this application over those two references, and that was Hunter's good faith belief and why Hunter felt free to proceed with its product. The PTO granted the hockey jersey patent though recently, right? In the face of the exact same reference. Well, the hockey jersey is a different design. It's got long sleeves instead of short sleeves. There's no mesh fabric. Remember, the V2 and the Eagles jersey had a large portion of the body imbued with this mesh fabric, so it's easy to understand why a patent examiner would not consider those two references, even if they were submitted, to be relevant to the issue of a jersey that did not have any mesh. What do you say to your opposing counsel who is telling us that the In re Borden so-related test for a secondary reference isn't by itself good enough to supply the necessary rationale and reasoning for combining elements from assorted references to lead to the claim dimension? Well, in the design patent, Your Honor, there are no words that describe the claim design except a very brief figure description. Right, but there has to be an identified rationale in the fact finder's opinion to make the combination. Well, there was set forth by the lower court an extensive rationale for making the combination, and I believe in a design patent case, once you show that the secondary references are related, that is sufficient because there can be no rationale drawn from design patents or designs to provide any kind of an explicit teaching beyond that, which is why KSR cannot be applied in a cookie, which is a utility patent case, as you know, cannot be applied 100% in the design patent context. We have apples and oranges here. There are no teachings in that way in the design patent. I would like to address, if the court will allow, this question of a conflict, if you will, between Durling and Egyptian goddess when it comes to the verbalization of a claim design, and suggest, even though we believe the lower court's conclusion of obviousness is sufficient to carry the day, the court may wish to consider this larger question in that there's a requirement for a district court to verbalize a claim design in the context of obviousness, but there's no requirement to do the same thing in the context of infringement, and we would submit that that is an inconsistency that someday, and maybe this case, would need to be addressed by the court. In Egyptian goddess, there were several rationales presented by the court as to why verbalization was not favored. Number one, a picture is worth a thousand words. The drawings are their own best description. There's enormous difficulty in trying to reduce a claim design to words. Secondly, verbalization places undue emphasis on individual features of a design rather than the overall appearance. Are you offering up now a solution that would require that the court go en banc in order to reconcile its precedent? Is that what you're advocating here? Yes, yes. There was a footnote in Egyptian goddess, wasn't there, that understood and recognized the verbal formulation, verbal description requirement for validity purposes is, in fact, existing law, and that there's a reason to have that there. There was a footnote, Your Honor. They said that the verbalization did not apply, citing Durling, of course, but there was no explicit reasoning, and, of course, a footnote in an unrelated issue is dicta, and there is no reasoning. I think the best we can garner from Durling is that the court wants to have a basis to review a lower court's decision on obviousness. They want to know the reasoning of the district court so they can review it. Are you conceding under current law the district court did not follow the requirements of our precedent? No, Your Honor, no. So on what basis would we go en banc? I thought your position was we win no matter what the test. We do. I'm not clear. There'd be no case, then. You'd be saying we take something up in dicta because it has no relevance to the result. I'm just not clear on what you're advocating. The reason I'm bringing this up, Your Honor, is because the appellant brought it up in their main argument, and I'm just suggesting that there is this inconsistency. This may not be the ideal case for considering this inconsistency, but the issue lies there. Mr. Sideman, your time is about out, but let me ask a quick question. What is the test? What's the proper perspective for 103 in Design Pacts? Is it ordinary observer or ordinary designer? It's a designer of ordinary skill, Your Honor, as set forth by a lot of this court's precedent, particularly the In Re Malbandian case that considered this very question. Is it an ordinary observer, or is it a designer of ordinary skill? And they considered all the precedent that said ordinary observer, and in a lengthy opinion, Judge Rich concluded that that is incorrect. It should be a designer of ordinary skill. And in high point, I think the court recognized this. Thank you, Your Honor. Thank you, Mr. Sideman. Mr. Diggs. May it please the court. I would like to discuss the Durling test a little bit. And counsel has suggested that it was fully met, I think, for those terms. As I understand the Durling requirements, the court is supposed to articulate what the claim design is, so that this court, a reviewing court, and the litigants can know what the court acknowledged as the claim design. That wasn't done here. What was done is she characterized five basic elements that are present in prior art jerseys and said, those are all present in the claim design. And then she said everything else is de minimis or obvious, which is not the Durling test. That's not how you do it. And this court, in the Apple Samsung case regarding a tablet computer, and in the recent high point case... Mr. Diggs, what was it about the district court judge's verbal description that was so lacking that we would need to send it back so that she could somehow improve upon what she did the first time around? I think the clearest way to answer that is, in her words, she identified two references she said could be Rosen references. They were so close or so similar. Obviously, what the district court did was look at a pet jersey and say, any pet jersey is the same. That's the same. She didn't. The district court judge did not acknowledge the ornamental features that make this pet jersey different from the others. In fact... Well, I think she did. She identified those differences and then ultimately found them in the secondary references, except for that extra line of stitching on the back, which she concluded was de minimis. Yeah, and I thought it was interesting. In the prior argument, counsel said that the serge stitching between the sleeves on the chest is not something you find in football jerseys. And I agree with that. But you also don't find it in any jerseys on the back at all. And it's designed that way. The Eagles jersey has serge stitching on the front and the back. Not down the rear. Except for the ones down the back. On the back, there is serge stitching. There's a line. Yes, there is. There's two lines. There's lines on the shoulders and then across the shoulder blade. And you're correct, Your Honor. What I'm talking about is the serge stitching that runs down the rear. That's not present in the prior argument. Nowhere. Not a record. Not that we're aware of. What is your best secondary consideration? We were talking about it the first time you were up here and I couldn't... I don't remember. I remember there was copying. You were suggesting, obviously, the proponent is copying. And then there was a license. But then I also heard that the license is to a company that your client actually controls. Yeah, I'm not sure if that's... I'm not sure the status of the license quite is. Is there anything else in the secondary consideration? Well, the Hawkins jersey as well. But the copying is the big one. They had a V2 jersey they previously sold. They could have sold that. We certainly can't claim that that is an infringement. They had this Eagles jersey they could have copied. They had 40 Canines jerseys they could have copied. Besides Hunter, who else is copying? I'm not aware of any others at this time. Okay, so it's the copying by Hunter and then it's the license to a company that may or may not be controlled. And the fact that the PTO granted the hockey jersey patent in view of the same art that suggests that an obviousness determination by this court is not correct. That was my third secondary consideration. I guess it's our position that this case should not have been decided on summary judgment. There are way too many issues that should go to a finder of fact, to a jury, and that the court basically took away our client's right to trial. And so we respectfully urge the court to send it back for trial. Thank you.